IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Robert C. Stills, | ) | C/A: 3:15-3699-JFA |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| Janney Montgomery Scott LLC, | ) | |
| Prudential Retirement Insurance and | ) | |
| Annuity Company, and Ansaldo STS | ) | |
| USA, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| Janney Montgomery Scott LLC, | ) | |
| | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Amy Stills, | ) | |
| | ) | |
| Third Party Defendant. | ) | |
| _____ | ) | |

This case arises from a dispute between Plaintiff Robert C. Stills ("Plaintiff") and Defendants Janney Montgomery Scott LLC ("JMS"), Prudential Retirement Insurance and Annuity Company ("Prudential"), and Ansaldo STS USA, Inc. ("Ansaldo") regarding a 401k distribution. In essence, Plaintiff is complaining about his own mother, Amy Stills ("Stills" or "Mother"), spending his money that she was entrusted with while he was

a minor. Plaintiff did not include Stills as a Defendant, but she has since been brought into the case by Defendant JMS.

Plaintiff alleges that Stills should never have been entrusted with his money because she was not appointed by a court as his guardian. Plaintiff claims that Defendants are responsible for the losses he sustained, which occurred due to his own mother's conduct. For the purposes of this motion, Plaintiff claims that Defendant Ansaldo is responsible for his losses because it breached fiduciary duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq*. Defendant Ansaldo has filed a Rule 12(b)(6) motion to dismiss, or in the alternative, a motion for summary judgment per Rule 56 of the Federal Rules of Civil Procedure. Ansaldo alleges that Plaintiff cannot make a valid claim, and that it is therefore entitled to judgment as a matter of law.

## I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff was the great nephew of the late Mary Eva Spence ("Spence" or "Decedent"). Spence was a long-time employee of Defendant Ansaldo and its predecessor, and was also a participant in the Ansaldo STS USA Retirement/Savings Plan ("Plan"). Ansaldo is the Plan Sponsor and Plan Administrator or the Plan.

In 2013, Spence became ill and never returned to work at Ansaldo. During her last illness, Stills, the mother of the Plaintiff, took care of her. Like Spence, Stills was also a long-time employee of Ansaldo. On approximately May 3, 2013, Spence named Plaintiff

as a 50% beneficiary with respect to her interest in the Plan. Plaintiff's minor sister, who is not a party in this case, is the beneficiary of the remaining 50% of Spence's interest in the Plan. Spence passed away on May 28, 2013.

Because the Plaintiff was a 16-year-old minor at the time of Spence's death, a question arose as to who should receive his funds from the Plan.   Paragraph 7.5(F) of the Plan states:

> If, in the opinion of the Plan Administrator, a Participant or Beneficiary entitled to a Plan distribution is not able to care for his/her affairs because of a mental condition, a physical condition, or by reason of age, at the direction of the Plan Administrator, the Trustee will make the distribution to the Participant's or Beneficiary's guardian, conservator, trustee, custodian (including under a Uniform Transfers or Gifts to Minors Act) or to his/her attorney-in-fact or to other legal representative, upon furnishing evidence of such status satisfactory to the Plan Administrator and to the Trustee.  The Plan Administrator and the Trustee do not have any liability with respect to payments so made and neither the Plan administrator nor the Trustee has any duty to make inquiry as to the competence of any person entitled to receive payments under the Plan.

On June 12, 2013, Prudential, pursuant to its role as the Plan's record keeper and an Administrative Services Agreement, sent a letter addressed to "Guardian for Robert C. Stills, Jr." enclosing a Death Claim form. On June 25, 2013, Prudential received a Death Claim form listing the Plaintiff as the beneficiary. The form requested that Prudential transfer the funds via a Non-Spouse Beneficiary Direct Rollover to an Inherited Individual Retirement Account at JMS. Stills' signature on the document appeared on the line for Beneficiary's/Guardian's Signature.

On July 12, 2013, after receiving the Death Claim form, Prudential sent Stills a

letter stating:

> We have received your request to settle the account of Mary K. Spence from the above referenced plan. Unfortunately, we cannot honor your request for the following reason(s):
>
> - Please provide Guardianship documentation to prove you are the minor beneficiary's legal guardian.
>
> - Please return this letter and the necessary information as indicated above in the envelope provided or fax it to 1-866-439-8602 . . .

After receiving this letter, Stills contacted Haley Smith at Ansaldo, who then faxed in copies of birth certificates and Form SSA-1099 – Social Security Benefit Statement with respect to Plaintiff and his minor sister. Plaintiff's birth certificate showed that Stills is the Plaintiff's mother, while the Social Security Benefit Statement showed that Stills receives benefits for the Plaintiff.

On July 23, 2013, Ansaldo received an email from Murray Carter ("Carter") with JMS, which outlined the issues raised by Prudential with respect to the Plaintiff's guardianship. It is apparent from Carter's email that he cut and pasted out of an email from Mike Ruane with Prudential and then inserted his own comments in bold or a different typeface with respect to Prudential's questions. Carter's email was addressed to Sandy Turley ("Turley") and Haley Smith ("Smith"), both of whom worked for Ansaldo. The email provided:

> Sandy and Haley,
>
> **I'm reaching out to you regarding the Mary Eva Spence Estate. Ms. Spence had listed to Megan Stills and Robert Stills as the beneficiaries to her 401(k) account as you may know these are Amy Stills minor**

4

> children. We are trying to distribute the funds to each child so it can be deposited to their Beneficiary's IRA's.
>
> When the paperwork was returned to Prudential we were informed that Guardianship papers were required. As such, Amy produced birth certificates and Social Security statements to show the relationship. However, see response of Prudential from Mike Ruane:
>
> Unfortunately, a birth certificate and Social security statement are not Guardianship papers. This is not sufficient proof of guardianship.
>
> Again, the only way to receive Guardianship paperwork is by going to the local Court/Family Court.
> **Without having Amy Stills go through the effort and expense to do this Prudential offered an alternative.**
>
> The only other way to have this approved without having the Guardianship documentation up front is by explaining all of this to the Plan and asking the Plan to weigh in and provide their approval for processing in lieu of having forms. I know the account is a pretty large balance so this is something that needs to be fully reviewed and all information relayed.
>
> I have seen Plans approve beneficiary payouts in special circumstances. They would need to be made aware of all the facts and that they are taking fiduciary responsibility when telling us to proceed without requesting the standard Guardianship documentation.
> **Sandy, would you be willing on behalf of the plan to accept that Amy is authorized to help her children in this manner?**

After receiving the email, Turley contacted Joseph "Rocky" Eiseman ("Eiseman"), the Plant Manager for Ansaldo's Batesburg plant, regarding Stills' status as Plaintiff's guardian. Eiseman then contacted Stills, who told Eiseman that she was the guardian of her minor children. Stills worked under Eiseman at the plant for 20 years and had never given him any reason to suspect that she would participate in any sort of improper conduct with respect to her children. Therefore, Eiseman relayed the fact that Stills was

5

the Plaintiff and the Plaintiff's sister's guardian to Turley.

Turley was aware that Stills was the mother of the Plaintiff and his sister and that she provided for them by including them on her medical insurance. Turley was also made privy to the birth certificates and Social Security information that was provided to Prudential, and she knew that Stills took substantial time off to care for Spence in her final days. As a result, on July 29, 2013, Turley wrote to Murray Carter at JMS on behalf of Ansaldo. Turley's document stated:

> I would like to approve this. I can confirm that Amy Stills has full guardianship of Megan Stills and Robert Stills and am requesting that Prudential process Mary Eva Spence's beneficiary request from her 401k accordingly. Please let me know who at Prudential should receive this verification.

To satisfy Michael Ruane's original questions at Prudential, Turley copied him on this communication.

On July 31, 2013, Prudential issued a $205,686.70 check to a JMS IRA account for the benefit of the Plaintiff, which represented his interest as a 50% beneficiary of Spence's interest in the Plan. However, after the check was issued into the Plaintiff's account, his mother began to make substantial withdrawals for her own personal use. By December 31, 2014, just after the Plaintiff's 18th birthday, his JMS IRA account value had fallen by $110,402.08 down to $94,266.65. The Plaintiff's mother was responsible for the entire $110,402.08 withdrawn from the account as she chose to withdraw and use the Plaintiff's money for her own personal benefit.

On August 12, 2015, Plaintiff filed a Complaint in the Lexington County Court of Common Pleas alleging negligence and breach of fiduciary duty. (ECF No. 1-1). On September 16, 2015, Defendants removed the case to this Court. (ECF No. 1). On March 2, 2016, Ansaldo filed this motion to dismiss, or in the alternative, for summary judgment. (ECF No. 41). Plaintiff filed a response in opposition to Ansaldo's motion on April 20, 2016, and Ansaldo replied to Plaintiff's response on May 5, 2016. (ECF No. 49; ECF No. 55). On August 1, 2016, oral argument was held before this Court. (ECF No. 69). Therefore, this matter is ripe for review by the Court.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

It is well established that a Rule 12(b)(6) motion examines whether a plaintiff has stated a claim upon which relief can be granted.  Traditionally, a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The reviewing court need only accept as true the complaint's factual allegations,

not its legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

> Expounding on its decision in *Twombly*, the Supreme Court stated in *Iqbal*: [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 555-57, 570) (citations omitted); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003).

### B.     Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that

burden and a properly supported motion is before the court, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323. All inferences must be viewed in a light most favorable to the non-moving party, but he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III. ISSUES

There are 3 issues that must be decided by the Court:

    A.    Whether Ansaldo's decision to disburse the Plaintiff's money from the Plan to his mother was reasonable.

    B.    Whether S.C. Code § 62-5-433 applies to the distribution of a 401k plan.

    C.    Whether the South Carolina Probate Code, specifically Title 62, Article 5, is preempted by ERISA.

## IV. ANALYSIS

### A. BREACH OF FIDUCIARY DUTY

Plaintiff alleges that Ansaldo, as Plan Administrator, breached the fiduciary duties imposed by ERISA § 404, 29 U.S.C. § 1104 when it issued the money to the Plaintiff's mother. The Court disagrees. As Ansaldo points out, it was given discretion by the Plan in applying the Plan's terms, and also that its decision to issue the money to Stills was reasonable under the circumstances.

Ansaldo argues that pursuant to the terms of the Plan, it was only required to act in a prudent manner, i.e., not negligently. Ansaldo further argues that when making decisions regarding the Plan, rather than being tasked with predicting what may happen in the future, it is tasked with making prudent decisions regarding the Plan based only on present information. The Court agrees.

When viewing paragraph 7.5(F) of the Plan, it is clear that Ansaldo had discretion with respect to determining whom to pay when the beneficiary was a minor. As stated previously, Paragraph 7.5(F) provides:

> If, *in the opinion of the Plan Administrator*, a Participant or Beneficiary entitled to a Plan distribution is not able to care for his/her affairs because of a mental condition, a physical condition, *or by reason of age*, at the direction of the Plan Administrator, the Trustee will make the distribution to the Participant's or Beneficiary's guardian, conservator, trustee, custodian (including under a Uniform Transfers or Gifts to Minors Act) or to his/her attorney-in-fact or to other legal representative, *upon furnishing evidence of such status satisfactory to the Plan Administrator and to the Trustee*. The Plan Administrator and the Trustee do not have any liability with respect to payments so made and neither the Plan administrator nor the Trustee has any duty to make inquiry as to the competence of any person entitled to receive payments under the Plan.

(ECF No. 41-1 p. 15) (emphasis added). The language "in the opinion of the Plan Administrator" and "upon furnishing evidence satisfactory to the Plan Administrator" undoubtedly gives Ansaldo discretion to make decisions such as determining whether the benefits should have been paid to Stills as guardian of the Plaintiff.

10

It is well established that "'[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers . . . A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.'" *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1185-86 (4th Cir. 1989) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). Moreover, "'[w]here discretion is conferred upon the trustee with respect to the exercise of power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion.'" *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000) (quoting *Firestone*, 489 U.S. at 111). "[A] mere mistake will not render [the trustee] liable for a loss. Only fault—in the form of bad faith[1] or negligence—will." *Clark v. Feder Semo & Bard, P.C.*, 895 F.Supp.2d 7, 33-34 (D.D.C. 2012).

In assessing whether a fiduciary acted unreasonably in exercising its discretion, the Fourth Circuit has listed eight nonexclusive factors to guide courts:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

---

[1] There have been no allegations of bad faith in this case.

*Booth*, 201 F.3d at 342-43. When looking at the eight *Booth* factors and other facts relevant to this case, it is clear that Ansaldo acted prudently and made a reasonable decision.

As to the first factor, the language of the Plan allowed the Trustee to make a distribution to the Plaintiff's guardian, and gave the Trustee discretion in doing so. Even though Stills failed to go to Court and get appointed as the Plaintiff's guardian for the purposes of the Plan's distribution in this case,[2] she was still the statutory guardian of the Plaintiff as a matter of law. *See* S.C. Code Ann. § 63-5-30 ("The mother and father are the joint natural guardians of their minor children . . ."). Although this statute does not require Ansaldo to recognize Stills as the Plaintiff's guardian, the statutory affirmation of that relationship points to Ansaldo's decision being reasonable.

When looking at the second *Booth* factor, the purposes and goals of the Plan were met because Ansaldo's decision allowed the Decedent's funds to be promptly moved to an account for the benefit of her named beneficiaries. The third factor also supports the position that Ansaldo's decision was reasonable. Nothing that Ansaldo reviewed would have shown that Stills would engage in the type of behavior that gave rise to this dispute. As to the fourth *Booth* factor, Ansaldo's interpretation of the word "guardian" was consistent with all other provisions of the Plan. The word "guardian" was not defined in the Plan, but nowhere in the Plan is there any suggestion that "guardian" required

---

[2] On February 27, 2014, in Case No. 2014-CP-32-00723 in the Court of Common Pleas of Lexington County, South Carolina, Stills was appointed as the Plaintiff's guardian for receipt of funds. Although

something along the lines of the appointment of a guardian *ad litem*. If a court-appointed guardian was required, surely the Plan would have expressly required that language.

When considering the last four *Booth* factors, nothing points to Ansaldo's decision being unreasonable. The decision making process was reasoned and principled, and no provision of ERISA conflicts with Ansaldo's decision. Additionally, there is no evidence that would suggest that Ansaldo had any improper motive in approving Stills' request. There is also nothing that would suggest that Ansaldo had a conflict of interest in making the decision. As a result, when weighing all eight of the *Booth* factors—which are not exclusive—surely no reasonable jury could find that Ansaldo acted unreasonably in making the decision it made.

ERISA grants a fiduciary broad discretion to determine who should receive plan benefits. When viewing the terms of the Plan in this case, it is clear that Ansaldo was clothed in discretion in applying those terms. With respect to the Plan benefits, Ansaldo made a reasonable decision that Stills be paid funds as guardian for the Plaintiff and his minor sister. Stills was employed by Ansaldo and its predecessor for 20 years. She was the mother of both the Plaintiff and his sister, which was evidenced by the birth certificates she provided. Both children lived with Stills, and she took care of their basic needs. Moreover, Stills provided evidence that both the Plaintiff and his sister were her dependents for purposes of Social Security. There was no evidence that Stills would have

---

this case is completely different from the one in Lexington County, the fact that Stills was appointed by the court as the Plaintiff's guardian also bolsters the reasonableness of Ansaldo's decision.

engaged in the type of conduct that gave rise to this dispute when Ansaldo made the decision to issue the Plaintiff's money to his own mother.[3] Under the circumstances of this case, Ansaldo's decision to issue the Plaintiff's money from the Plan to his mother while he was a minor was reasonable.

### B.     S.C. CODE § 62-5-433

The Plaintiff argues that S.C. Code § 62-5-433 required that Ansaldo pay the money from the Plan through a conservator because the sum to be disbursed was over $25,000. The Court disagrees. It is well established that courts consider the plain meaning of statutory language when interpreting a statute. *See U.S. v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010) (citing United States v. Abdelshafi, 592 F.3d 602, 607 (4th Cir. 2010)). When viewing the language of § 62-5-433, it is clear that the statute applies only to settlements of claims. Specifically, § 62-5-433(B) states "[t]he settlement of any claim over twenty-five thousand dollars in favor of or against any minor . . . for the payment of money or the possession of personal property must be effected on his behalf in the following manner:" Further, "claim" is defined in § 62-5-433(A)(2) as "the net or actual amount accruing to or paid by the minor or incapacitated person as a result of the *settlement*." (emphasis added).[4] In this case, there was no settlement of a claim. Instead, this case arose from the distribution of a 401k plan. Therefore, § 62-5-433 is inapplicable.

---

[3] "[T]he prudent person standard is not concerned with results; rather, it is a test of how the fiduciary acted viewed from the perspective of the time of the challenged decision rather than from the vantage point of hindsight." *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915-917-18 (8th Cir. 1994) (citations omitted).

[4] In fact, § 62-5-433 is titled "Definitions; procedures for settlement of claims in favor of or against

## C.    PREEMPTION

Since the Court has determined that S.C. Code § 62-5-433 is inapplicable to this case, it is not necessary to address the issue of whether the South Carolina Probate Code is preempted by ERISA.

## V.    CONCLUSION

Based on the record before the Court, the briefs filed by the parties, and the arguments of counsel, the Court hereby **GRANTS** Defendant Ansaldo's motion for summary judgment (ECF No. 41).

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

August 11, 2016                              Joseph F. Anderson, Jr.
Columbia, South Carolina                United States District Judge

---

minor or incapacitated persons."